UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLI  D. MOORE,

                  Plaintiff,                     Case No.08-12353
                                              Honorable Julian Abele Cook, Jr.

v.

THE THIRD JUDICIAL CIRCUIT OF MICHIGAN,

                  Defendant.

<u>ORDER</u>

     This employment discrimination lawsuit involves allegations by the Plaintiff, Kelli D. Moore, who contends that she was subjected to (1) unwarranted acts of sexual harassment by her former supervisor, Bernard Kost, with the expressed or implied approval of their employer, the Defendant (The Third Judicial Circuit of Michigan),  in violation of Title VII of the Civil Rights Act of 1964, and (2) retaliatory measures in response to her filing various discrimination claims.

     The Defendant now seeks to obtain the entry of a summary judgment relating to those issues that are now pending before the Court.  For the reasons that are stated below, this motion will be granted in part and denied in part.

I.

     Moore has been an employee of the Defendant since October of 1997.  Despite having begun her employment as a staff investigator with the Recorder's Court in Detroit, Michigan in 1985, she rose through the ranks over the years.  In January of 2004, the then-Chief Judge Mary

Beth Kelly appointed Kost to serve as the executive administrator of the Court.[1] He, in turn, appointed Moore to the position of his deputy court administrator.[2]

Moore initially enjoyed a good professional working relationship with Kost who viewed himself as a helpful mentor to her. However, Moore submits that this seemingly positive professional relationship began to change after she and her husband separated in 2005. According to Moore, Kost's interest in her took on a dramatically different tone which became sexual in nature - a difference which included (1) looking up and down her body with "elevator eyes;" (2) staring at her breasts; (3) telling her, via text-messaging, that she was missed; (4) sending emails in which he told her that she was "arresting,"which was subsequently defined by him as "attracting and holding the attention; striking;" (5) encroaching upon her personal space; (6) sending flowers to her home and office; (7) transmitting birthday cards which suggested that he saw her as a "special someone" who looked "good;" (8) saying to her that if "you show me yours I'll show you mine" (which Kost allegedly conceded was an inappropriate comment); (9) touching her hands on three occasions while they rode in a car together; (10) frequently asking her to have lunch, dinner or coffee with him, (11) urging her to accompany him to professional basketball games in a vendor's corporate suite; and (12) telling her that he liked seeing her name under his on the glass door of the

_____

[1]As the executive administrator, Kost, who reported directly to the chief judge, was tasked with overseeing all of the non-judicial departments that provided services to the court, including such essential matters as budget and finance, human resources, information technology, jury services, and docket management support.

[2] In her role as the deputy court administrator, it was Moore's responsibility, *inter alia,* to assist Kost and to perform those tasks and duties that were delegated to her, including (1) the management of court-wide processes, (2) overseeing the case processing departments, (3) coordinating entities that impact the case management functions of the court, and (4) acting as a representative of the executive administrator to non-court entities.

court administrator's office.

Moore claims that in May and June of 2006, she initially complained about Kost's allegedly inappropriate behavior with the human resources director, Pamela Griffin. On May 21, 2007, she filed two formal complaints with Griffin which ultimately led Chief Judge Kelly to retain an outside attorney, Sharon Woods of Barris, Sott, Denn, and Driker, to evaluate Moore's charges. According to the Defendant, Moore's initial allegations were more limited in scope and did not include any claims that Kost had viewed her in a lustful manner. Woods subsequently issued a forty-page investigative report (dated June 4, 2007) wherein she concluded that Kost had not sexually harassed Moore.

Approximately three months thereafter, Moore filed a discrimination charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 26, 2007. After receiving a "right to sue" letter from the EEOC on March 17th of the following year, she commenced this lawsuit on June 2, 2008.

The parties offer sharply contrasting views of the events that occurred after Moore filed her complaint with the EEOC. From Moore's perspective, Kost engaged in a campaign of retaliatory harassment by impeding her duties as a deputy court administrator. She also complains that three chief judges (namely, Mary Beth Kelly, William Giovan, and Virgil Smith) have taken unjust adverse employment actions against her.[3] Moore now laments that, despite having achieved a sterling employment record over the years prior to registering verbal and written complaints about

---

[3]Moore claims that Chief Judge Kelly imposed unjustified discipline against her within two months after learning of the EEOC complaint. She also accuses Chief Judge Giovan of telling her that these sexual harassment allegations were untrue and represented an effort to procure money from the court. Finally, Moore maintains that Chief Judge Virgil Smith told other persons that he intended to "get rid of" her.

Kost, her personnel file is now replete with disciplinary marks that she received thereafter.

By contrast, Moore's post-complaint conduct has been described by the Defendant as being obsessive and designed to create documentary support for this lawsuit. In fact, it submits that Moore has (1) filed a barrage of petty, unfounded internal complaints about Kost, and (2) quibbled about every simple business decision in an apparent effort to work without any oversight, input, or direction from him. According to the Defendant, she registered complaints during this time which included allegations that she was a victim of retaliation by Kost who (1) prevented her from attending certain significant business meetings, (2) eliminated some of her official duties, (3) gave her an unjustifiable amount of additional work assignments, and (4) unfairly criticized her responses to several work-related issues (including failing to investigate the source of a death threat against a court referee, incompetently analyzing the troubled docket of a judge, and purposely declining to return to work following an off-site business meeting, allegedly in order to engage in shopping).

## II.

The Defendant seeks the entry of a summary judgment in connection with Moore's third amended complaint on the basis of Fed. R. Civ. P. 56(c), believing that she cannot establish a *prima facie* case of a hostile work environment sexual harassment claim under Title VII. A summary judgment may be granted in those cases where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When presented with such a dispositive motion, the district court must view the evidence in a light that is most favorable to the non-moving party. *60 Ivy Street Corp. v. Alexander*, 822 F.3d 1432, 1435 (6th Cir.

4

1987).

An issue is "genuine" if it contains evidence upon which a jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of proof rests upon the moving party to affirmatively demonstrate the absence of all genuine issues of a material fact in the record. *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). A satisfaction of this burden may be accomplished in one of two ways; namely, (1) the submission of affirmative evidence which negates an essential element of the non-moving party's claim or (2) a demonstration to this Court that the non-moving party's evidence is insufficient to establish an essential element of the claim. *Id*. at 331. This burden may be discharged by a "'showing'- that is, pointing out to the district court - that there is an absence of evidence to support the non-moving party's case." *Id*. at 325. Once the moving party discharges its burden, the burden then shifts to the non-moving party to present specific facts which show a triable issue. *Gregg*, 801 F.2d at 861.

III.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), prohibits employers from discriminating against a worker "with respect to his compensation, terms, conditions, privileges of employment, because of such individual's . . . sex." There are two bases upon which sexual harassment can be based: to wit, (1) "quid pro quo" harassment, which occurs when submission to unwanted sexual advances becomes a condition for the receipt of job benefits or when a refusal to submit to the supervisor's sexual demands results in a tangible job detriment;[4] and (2) "hostile work environment" harassment, which occurs when there is unwelcome, harassing behavior based on sex (a) that is sufficiently severe or pervasive to adversely affect the conditions

---

[4]*Bowman v. Shawnee State University*, 220 F.3d 456, 461 (6th Cir. 2000).

of employment, and (b) that occurs under circumstances wherein the employer failed to take immediate and appropriate corrective action, despite knowledge of the harassment.[5]  Title VII also forbids the placement of retaliatory acts against an employee for engaging in any activity that is protected under the statute.

A.

The Court will initially address the Defendant's objections to an order by a magistrate judge who allowed Moore to supplement her third amended complaint with claimed acts of retaliation that occurred between November 2008 and January 2010.  In making this ruling, the magistrate judge rejected the Defendant's protestation that Moore had not exhausted her administrative remedies relating to this newly-alleged conduct.  It was the opinion of the magistrate judge that an adoption of the Defendant's proposal would not advance the remedial purposes of Title VII, and would only create procedural technicalities since Moore had already filed her lawsuit alleging a continuing act of retaliation.

In challenging the order (which this Court reviews for a determination as to whether the challenged directive is "clearly erroneous or contrary to law"),[6] the Defendant argues that excusing the exhaustion requirement deprives the EEOC of its investigatory and conciliatory functions with regard to Moore's new claims. Furthermore, the Defendant complains that Moore's new claims could not have been evaluated by the EEOC since (1) the cited misconduct occurred more than eight months after its investigation had closed, and (2) they were based on the conduct of a different actor (e.g., Chief Judge Virgil Smith) and through distinctly different employment actions.  In this

---

[5]*Knox v. Neaton Auto Prods. Mfg*., 375 F.3d 451, 459 (6th Cir. 2004).

[6]*Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993).

6

regard, the Defendant cited cases which conclude that under similar circumstances, the new claims are not treated by courts as having been exhausted, and are therefore barred from being litigated.

When reviewing this argument,  the Court finds that the decision by the magistrate judge was well-supported by the law and was not clearly erroneous.  It is true that an exhaustion of administrative remedies is a prerequisite to filing a lawsuit in a federal district court which alleges discriminatory acts under Title VII. *See Brown v. General Serv. Admin.*, 425 U.S. 820, 823-33 (1979). It is also true that many courts have refused to allow plaintiffs to proceed to trial on claims for allegedly adverse actions that occurred only after the EEOC had already completed its investigation.[7] By and large, those courts have reached this conclusion on the basis of an argument that - logically speaking - any later-in-time claims could not have fallen within the scope of a reasonable investigation by the EEOC into a claimant's original charges, and thus were not reasonably related in a way that should excuse exhaustion.

It is clear to the Court that the magistrate judge was aware of the reasoning in such cases, as evidenced by its conclusion that the case at bar does not fit neatly into the "expected scope of the investigation" test (which typically excuses exhaustion).  (Order at 5).  Notwithstanding, the magistrate judge undertook a different analysis and found that exhaustion should still be excused inasmuch as this case involves an ongoing dispute between Moore and her employer. It is readily apparent to this Court that the magistrate judge believed that the Defendant's suggested approach would be contrary to the policy behind the exhaustion requirement (as well as to judicial economy).

---

[7]*See, e.g., Flowers v. Potter*, No. 3:05-052, 2008 WL 697630, *10-11 (S.D. Ohio March 11, 2008); *Gonzales v. National Railroad Passenger Corp.*, 376 Fed. Appx. 744, 746 (9th Cir. Apr. 19, 2010); *Allen v. National Railroad Passenger Corp.*, No. 03-3497, 2005 WL 2179009, *10-11 (E.D. Pa. Sp. 6, 2005); and *Schaefer v. U.S. Postal Service,* 254 F. Supp. 3d 741, 752 (S.D. Ohio 2002).

(Order at 6).  These conclusions by the magistrate judge are well-supported by a distinct line of cases which reflect similar reasoning.  *See generally, Delisle v. Brimfield Township Police Department,* 94 Fed. Appx. 247, 252 (6th Cir. 2004) (observing that "due to the very nature of retaliation, the principle [sic] benefit of EEOC involvement, mediation and claims of conciliation, are much less likely to result from a second investigation") (citing *Butts v. The City of New York Dep't. of Housing Preservation and Development,* 990 F.2d 1397, 1401-03 (2d Cir.1993) (reversed on other grounds)); *Russo v. Lightning Fulfillment, Inc.,* 196 F. Supp. 2d 203, 208 -209 (D.Conn. 2002) (observing that when it comes to claims of retaliation, the "reasonably related" exception "does not rest on the theory that the investigating agency is likely to discover the alleged misconduct during its investigation of plaintiff's allegations . . . " ).

In this regard, the *Russo* court specifically recognized the possibility that (1) "the retaliation would come after the EEOC investigation was completed," and (2)  the exhaustion rule is relaxed in such contexts "because of the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself."); *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 609 (E.D.N.Y. 2010) ("[T]o not allow such an exception [for the exhaustion requirement] would have the perverse result of rewarding the most egregious forms of retaliation."). Although cited for a different purpose, the magistrate judge also referenced two cases that provided support for the challenged decision; namely, *Bhama v. Mercy Hospital Medical Corp.*, No. 08-11560, 2009 WL 2595543, *6-7 (E.D. Mich. 2009) and *Shamar v. City of Sanford, Florida*, No. 6:06-735-Orl-28GJK, 2008 WL 2783367, *1 (M.D. Fla. 2008).  In light of this clear supporting authority, the Court declines the invitation by the Defendant to find that the ruling of the magistrate judge was "clearly erroneous and contrary to law."

8

The Court must, and does, also reject the Defendant's second challenge; to wit, that the magistrate judge's order is contrary to the ruling in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 109-15 (2002). In *Morgan*, the Supreme Court held that in order to act in a timely manner under Title VII, a plaintiff must file a separate EEOC charge for each distinct discriminatory or retaliatory act, and cannot bootstrap such claims with "sufficiently related incidents" that would otherwise be time-barred. *Id.* However, there has been no definitive showing by the Sixth Circuit that the rule announced in *Morgan* has been extended as a limitation on the exhaustion requirements of Title VII which arguably presents an entirely different question. *See e.g., Delisle, supra* at *5 (observing that *Morgan* does not stand for proposition that court lacks jurisdiction to hear claims of retaliatory acts that may have occurred subsequent to plaintiff's administrative filing, and referencing other federal courts that have found such reliance on *Morgan* to have been misplaced). Inasmuch as the magistrate judge's finding is not clearly barred by *Morgan*, the Court will not disturb the existing order on this ground. It should also be noted that the Court does not find any error in the challenged order by the magistrate judge who discounted the "irrevocable prejudice" argument advanced by the Defendant. Inasmuch as the magistrate judge was justified in allowing the proposed amendment, the Defendant's objections to the order must be, and are, rejected.

B.

The Defendant also argues that it is entitled to the entry of a summary judgment on Moore's claim of sexual harassment based on a *quid pro quo* theory. To prove this claim, Moore - as an aggrieved person - must show that (1) she is a member of a protected class; (2) she was subjected to an unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the claimed harassment was based on sexual grounds; (4) her submission to the unwelcome

9

advances was an express or implied condition for receiving job benefits or that her refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment; and (5) the employer should be found liable under a *respondeat superior* theory.  *Highlander v. K.F.C. Nat'l Management Co.*, 805 F .2d 644, 648 (6th Cir.1986).

Although the Defendant challenges Moore's ability to establish any of the foregoing elements, the bulk of its argument is directed to two of the above-cited *Highlander* elements. In its pleadings, the Defendant maintains that (1) Kost never conditioned any of Moore's job benefits on maintaining any form of a sexual relationship with him and (2) none of the conduct about which she complains constitutes a request for sexual favors.  It also points the Court to the lack of evidence that she lost any privilege of employment for refusing to submit to the claimed sexual demands.

In response, Moore opines that Kost's romantic overtures toward her were "inferentially sexually motivated" and thus it, in her judgement, are sufficient to establish- on a *prima facie* basis - that the conduct in question  was based on sex.  Specifically, Moore complains that Kost committed a variety of socially improper acts, all of which had distinctive and uncomfortable sexual overtones (including expressing jealousy about her relationships with other male co-workers, trying to get her to travel with him out of town, saying he missed her three times in one day as he followed her around the office, touching her inappropriately three times, and making a host of comments laden with sexual innuendo [e.g. telling Moore to "stand up and turn around," calling her a "chocolate eclair," and remarking about his penile implant]).  She points to corroborating statements from two co-workers (LaDonn Banks and Debra McGinnis) who ostensibly shared Moore's perception of Kost's sexually motivated conduct. She also identified reports by a former

co-worker (Ann Sullivan), who has also complained of unwelcome and  inappropriate sexual overtures by Kost.  Moore further theorizes that when she did not submit to Kost's various requests or demands, he (1) excluded her from future business meetings, (2) slammed doors (which she perceived as being physically threatening), (3) behaved in an extremely vindictive manner, and (4) caused her to be relieved from significant official duties and responsibilities. Even if the Court assumes *arguendo* that some or all of these identified acts of alleged misconduct by Kost amounted to an implied request for sexual favors, the evidence in the record  - when viewed in a light that is most favorable to Moore - fails to establish that (1) her submission to the unwelcome advances was an expressed or implied condition for receiving job benefits or (2) her refusal to submit to Kost's sexual demands resulted in a tangible job detriment.   This failing is fatal to this aspect of her lawsuit, inasmuch as  the gravamen of a quid pro quo claim is "that a tangible job benefit or privilege is conditioned on an employee's submission to sexual black-mail and that adverse consequences follow from the employee's refusal." *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 93 (D.D.C. 2007).

The record in this lawsuit  does not contain any allegations which suggest or demonstrate that Kost's alleged conduct rises to this level.  As to the first possibility (i.e., Kost made sexual advances that were implied conditions for receiving job benefits), the Court believes that no reasonable jury could or would construe such claimed misconduct by Kost as communicating an illicit  proposition.  For example, in paragraph 13 of her affidavit, Moore avers that in early December of 2005, Kost gave her the draft of a holiday letter in which he intended to thank his fellow staff employees for their various successes over the course of the year.  In essence, the note indicated that he  looked forward to working  with them in the upcoming year, subject to a

11

parenthetical note to Moore in which he stated ("Unless you piss me off. Then you'll be toast!").
Although the balance of his message was intended to be read only by "Third Circuit Court
employees," she perceived the above-referenced parenthetical comment as being a direct threat to
her if she did not acquiesce to Kost's inappropriate sexual attraction to her. Yet, this alleged
"veiled" threat (i.e., "you'll be toast!") was too general and vague to be reasonably interpreted as
a threat of an adverse employment action that could only be avoided by submitting to his earlier
sexual advances.

The Court takes a similar view of most of the other allegedly implied threats that were
supposedly lodged at Moore by him. A careful review of the official record reveals that much of
the challenged conduct did not involve any veiled threats to Moore. His behavior - while probably
boorish - reflected a tendency by him to become "angry" with /or to lecture Moore, but not in a
manner that would support her claims of sexual harassment. *See e.g.* ¶16 of Moore's affidavit of
January 18, 2011 (noting that when she refused Kost's invitation to a Super Bowl Party, he became
"angry" with her, only to later apologize that he felt responsible for her because he had "put [her]
in her capacity as Deputy Court Administrator); ¶ 34 of Moore's affidavit of January 18, 2011
(when she expressed her displeasure with Kost's text-messages, emails, and gifts, he immediately
accused her of poor work performance, became hostile, and demeaned her – but took no definitive
action against her); and ¶100 of Moore's affidavit of January 2011 (following a discussion with
Kost on February 25, 2008 about some of her complaints, he slammed the door to her office, and,
in doing so, blocked her egress and ingress, and, made her feel physically threatened). Although
some of Kost's conduct may have been uncivil, rude, combative or even frightening, the Court
believes that no reasonable jury could or would find that (1) Kost's identified conduct conveyed

an expressed or implied threat, or (2) any alleged threat by him was related to the continued receipt of job benefits.

In similar fashion, the record does not support Moore's contention that her refusal to submit to Kost's sexual demands resulted in a tangible job detriment for her. Inasmuch as such a showing is required to prevail on this aspect of her quid pro claim, the Defendant is entitled to a summary judgment on this count. *See generally, Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 753-54 (outlining distinction between quid pro quo and hostile work environment sexual harassment and noting that former is established when plaintiff demonstrates that "tangible employment action" was caused by refusal to submit to supervisor's sexual demands, i.e. when threat by employer is "fulfilled."). Here, Moore asserts that the consequences of her failure to submit to Kost's demands resulted in her being excluded from important business meetings, and being victimized by his vindictive conduct in a mean-spirited fashion which was evidenced by the slamming of doors, the imposition of unwarranted verbal reporting requirements, the poor treatment of her staff, and the removal of her authority on the Odyssey computer project. In the opinion of the Court, this is not the sort of "tangible employment action" against which Title VII was designed to protect. To the contrary, true employment actions of this type "are the means by which the supervisor brings the official power of the enterprise to bear on subordinates," and typically reflect significant changes in employment status, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, a change in benefits, or other factors unique to [the] particular situation." *Akers v. Alvey,* 338 F.3d 491, 497-98 (6th Cir. 2003). Although courts require that the designated adverse action be more disruptive than a mere inconvenience or a modification of the job responsibilities of the aggrieved employee, *Sanford v. Main Street Baptist Church Manor, Inc.*, 327

13

Fed. Appx. 587, *9 (6th Cir. 2009), this is exactly the nature of the Moore's complaints in this

lawsuit. Absent any evidence that her removal from committee assignments along with an inability

to work on a major office computer project had caused Moore to suffer a loss of compensation,

prestige, or security with the Defendant, the Court finds that this result - while perhaps less than

ideal for her - does not reflect an environment that is tainted with actionable sexual harassment.

*See also, Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (transfer and change

in job title does not amount to materially adverse employment action inasmuch as "reassignments

without salary or work hour changes do not ordinarily constitute adverse employment decisions");

*Jacklyn v. Schering Plough Healthcare Prod.,* 176 F.3d 921, 930 (6th Cir. 1999) (neither requiring

plaintiff to work at home during recovery from out-patient surgery nor rejecting previously-

approved computer expenses constitutes a materially adverse employment action). Thus, the

Defendant is entitled to the entry of a summary judgment on this aspect of Moore's lawsuit.

## C.

Next, the Defendant proclaims that there is no merit to Moore's claim for sexual harassment

based on an allegedly hostile work environment. In *Meritor Savings Bank v. Vinson*, 477 U.S. 57,

66 (1986), the Supreme Court held that a plaintiff may establish a violation of Title VII by proving

that discrimination based on sex created a hostile or abusive work environment. Yet, while Title

VII grants employees "the right to work in an environment free from discriminatory intimidation,

ridicule, and insult," *id.* at 65, it was not designed to be implemented as a general civility code in

the American workplace. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998).

Rather, in order for a claim to be actionable, an aggrieved person must experience discrimination

because of her gender, and the alleged sexual harassment must affect a "term, condition, or

14

privilege" of employment. *Meritor Savings, supra* at 67. More importantly, the alleged harassment in the workplace - when viewed in the totality of the circumstances - must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)).

Because Moore has not proffered any direct evidence of discrimination, the analysis by this Court of her sexual harassment claim must proceed according to the often-quoted burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Hoskins v. Oakland County Sheriff's Dept*., 227 F.3d 719, 731 (6th Cir. 2000). Utilizing this standard, a plaintiff must state a *prima facie* case of discrimination by establishing with a preponderance of the evidence, evidence of harassment that is (1) not welcomed , (2) based on sex, (3) sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment (or any matter directly or indirectly related to employment), and (4) committed by a supervisor or in such a way that the employer, through its agents or supervisory personnel, knew or should have known about the challenged acts of misconduct yet failed to take any immediate and appropriate corrective action. *Knox v. Neaton Auto Products Mfg., Inc.*, 375 F.3d 451, 459 (6th Cir. 2004).

Here, the Defendant maintains that Moore is unable to sustain her burden on the second and third aspects of the presently pending hostile work environment claim. Specifically, it alleges that Moore cannot establish that any claimed objectionable conduct by Kost was undertaken and based on her gender because, in its view, none of his alleged misconduct was objectively sexual in nature, sexually charged, or reflective of a request for a sexual relationship. In response, Moore takes a completely different view by pointing to Sixth Circuit precedent that acknowledges "even non-sexual harassing conduct may be deemed to be based on sex if the plaintiff is otherwise able

15

to show that, but for the fact of her sex, she would not have been the object of the harassment." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 271 (6th Cir. 2009) (citing *Williams v. General Motors Corp.,* 187 F.3d 553, 565 (6th Cir. 1999) (opining that "the law recognizes that non-sexual conduct may be illegally sex-based where it evinces 'anti-female animus, and therefore could be found to have contributed significantly to the hostile environment. . . .*Any* unequal treatment of an employee *that would not occur but for the employee's gender* may, if sufficiently severe or pervasive under the *Harris* standard, constitute a hostile environment in violation of Title VII.") (emphasis in original).

In the opinion of the Court, when this standard is employed, and after viewing the evidence in a light that is most favorable to Moore, the proofs here establish a genuine issue of a material fact as to whether Kost engaged in conduct that was "based on" her gender. The Court draws this conclusion from such claimed evidence as Kost's alleged "lustful looks, " the special attention that he allegedly devoted to her breasts with his "elevator eyes," his request for her to "turn around so [he] can see [her]," his commentary that Moore was "arresting," his comment that "I will show you mine of you show me yours," his decisions to send flowers to Moore at home and at work, as well as his alleged reference to Moore as a "chocolate eclair" when she was wearing white clothing. The Court finds that a reasonable jury, after viewing this evidence in a light that is favorable to Moore, could arguably perceive such verbal expressions as the kind that would not have occurred but for her gender. As such, the Court rejects the Defendant's effort to defeat Moore's lawsuit on the ground that any alleged harassment by Kost was not "based on" her gender.

Nevertheless, the Court concurs with the Defendant when it argues that Moore cannot establish the third factor of her *prima facie* case; to wit, that Kost's alleged sexual advances were

sufficiently severe or pervasive to adversely affect the terms, conditions, or privileges of Moore's employment.  The Sixth Circuit has noted that, although a sexual harassment claim is actionable if the alleged conduct is either sufficiently severe *or* pervasive, it need not be both.  *Burnett v. Tyco Corp.*  203 F.3d 980, 985 (6th Cir. 2000).

In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23 (1993), the Supreme Court reaffirmed this standard when it explained that courts must assess the severity and/or pervasiveness of the alleged misconduct by employing an objective as well as a subjective standard.  Thus, the conduct, about which an aggrieved party has complained, must (1) be sufficiently severe or pervasive so as to create the type of environment that  a reasonable person would find to be hostile or abusive, and (2)  cause the victim to subjectively regard the environment as abusive. *Id.* at 21-22. In evaluating the intensity of the alleged conduct, a court is directed to consider its frequency, severity, "whether it is physically threatening or humiliating, or a mere offensive utterance," and whether it "unreasonably interferes with an employee's performance."  *Id.* at 23.

Here, there is no real dispute that Moore perceived Kost's behavior as being severe and pervasive.  However, the Court is not persuaded that Moore has proffered enough evidence from which a jury could find that a reasonable woman in her position would also react to the alleged harassment in the same manner.  She appears to acknowledge that Kost's conduct was not blatantly and overtly sexual or otherwise explicit.  Furthermore, it is evident that there was no foul or derogatory language used by Kost which reflected an anti-female animus.  Rather, his conduct reflects primarily romantic overtures in the form of unwanted affection, attention, compliments, and fruitless attempts to spend non-business time with her.  In this regard, the complained-of conduct was not nearly as severe as that deemed actionable by the Sixth Circuit in other circumstances.  *See*

17

*e.g., Gallagher, supra* at 271-72 (finding jury question as to severity and pervasiveness of alleged harassment where (1) plaintiff was repeatedly called "bitch" by co-worker in anger; (2) plaintiff was referred to as heifer with "milking udders;" (3) company's female customers and associates were identified by such vile words as "whores," "sluts," "dykes" and "cunts;" (4) plaintiff's co-workers discussed and openly viewed obscene photographs and pornographic magazines; and plaintiff's co-workers engaged in explicit conversations about their own sexual practices and exploits at strip clubs); and *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008) (finding jury question as to whether conduct was severe and pervasive where perpetrator continually made comments that were graphic, personal, and sexually explicit - including repeated requests for oral sex, solicitations for sexual relationship, and remarks that were accompanied by sexual touching including rubbing of plaintiff's back, rubbing against another plaintiff with the accused's private parts, and attempts by the accused to grab plaintiff's waist while simulating sexual conduct). Not surprisingly, courts have been reluctant to find discriminatory harassment under comparatively milder circumstances which are more analogous to the type of conduct presented here. *See generally, Dyess v. Auburn University,* No. 3:07-635, 2008 WL 4080765, *8 (M.D. Ala. Sep. 2, 2008) (collecting cases from other circuits and finding that conduct was not severe where offender allegedly stood too closely to the plaintiff, asked plaintiff questions to get to know him better, looked at plaintiff once like he wanted to date him, yelled profanity at him once, touched the plaintiff's private parts for one or two seconds, called plaintiff's cellular phone several times, and tried to be alone with plaintiff); *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 582 (11th Cir. 2000) (reaching similar conclusion where complained-of-conduct involved telling plaintiff that she was very beautiful, making frequent [but non-threatening] phone calls to plaintiff

at night and on weekends, asking personal questions during such calls such as "are you talking to your boyfriend?" and "are you in bed yet?," placing his hand on plaintiff's inner thigh once, lifting plaintiff's dress once by four inches, feeling the hem and asking "what kind of material is that?," and on one occasion, unbuckling his belt, pulling down his zipper and tucking in his shirt when plaintiff walked into his office); and *Crowe v. Ohio Department of Rehabilitation and Corrections,* Nos. 98-4024, 98-4126, 188 F.3d 506, *5-6 (6th Cir. Sep. 1999) (unpublished) (rejecting hostile work environment claim where alleged harassing party expressed his attraction to plaintiff by sending her flowers at home and at work, leaving candy and notes at her desk, sending cards and emotional letters to her home, lingering at her desk to converse with her, asking to see plaintiff socially outside of work, showing up uninvited in public places frequented by plaintiff, telling plaintiff he wanted her, complimenting her for smelling "great," asking her to accompany him on vacations, declaring that if he were ten years younger, he would give plaintiff's suitors "a run for their money, running his hand across the plaintiff's hand in order to initiate contact with her, reciting pick-up line from a movie, giving her a picture frame, and attempting to buckle plaintiff's seatbelt because he wouldn't want her to smash her "pretty face" against the windshield).

In the case before the Court, it appears that Moore may be attempting to bolster her position in this litigation by pointing to the continuing nature of Kost's unsolicited attention efforts over a three-year period between 2005 and 2008. Yet, the Court agrees with the Defendant that notwithstanding the alleged frequency of Kost's claimed misconduct, it is different in kind from the type of offensive behavior that is deemed actionable in other sexual harassment lawsuits within the Sixth Circuit. Kost's conduct, while perhaps awkward, impolite, and even unpleasant, has not risen to the level of frequency or severity to be deemed as extreme. Accordingly, the Court

believes that a reasonable jury viewing the record objectively would not find that Kost's conduct altered the terms and conditions of Moore's employment. Therefore, the Defendant is entitled to the entry of a summary judgment in connection with Moore's hostile work-environment claim.

### D.

Finally, and while addressing Moore's claim that she was subjected to discriminatory retaliation, the Defendant posits that she did not experience any materially adverse employment action because none of the complained-of-conduct affected her wages or prospects for advancement. Furthermore, the Defendant also submits that Moore cannot establish the basic element of pretext.

In order to prevail on her retaliation claim, Moore must first demonstrate that (1) she was engaged in protected activity during all of the times that are relevant to this allegation, (2) the activity was known to the defendant, (3) the defendant thereafter took an adverse employment action against her, or she was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) the defendant did so because of her protected activity. *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000). If the employee succeeds in making such a showing, the employer must offer a legitimate, nondiscriminatory reason for its actions. Furthermore and if the employer is successful, the burden then shifts back to the plaintiff to show that the defendant's reason was a pretext designed to mask retaliation. *Id.*

Here, the Defendant does not dispute that Moore was engaged in a protected activity which was known to her work superiors. Rather, it is the Defendant's belief that Moore did not suffer any "adverse employment action," or any severe or pervasive retaliatory harassment. Moreover,

the Defendant posits that Moore cannot establish any causal connection between the protected activity and the alleged mistreatment, about which she complains.

As to the first issue (namely, whether Moore suffered a "materially adverse" employment action,") the test is whether the complained-of act "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006). There is no need for the challenged conduct to have affected the terms, conditions, or status of employment. *Id.* at 57, 61 ("the anti-retaliation provision does not confine the action and harms it forbids to those that are related to employment or occur at the workplace . . . . the provision covers those . . . employment actions that would have been materially adverse to a reasonable employee or job applicant.").

On this point, Moore claims that she was subjected to retaliatory conduct by Kost, as well as by Chief Judges Kelly, Giovan, and Smith. As to Kost, Moore says that he immediately began to harass her and accuse her of not performing her position soon after she filed the complaint in this lawsuit.[8] She also asserts that (1) Kost and Chief Judge Kelly created a paper trail which reflected an unfounded registration of poor work performances; (2) Chief Judge Giovan falsely accused her of lying, barred her from having access to certain areas of the court, and took away her master key to other areas of the court building; and (3) Chief Judge Smith refused to consider her as a viable candidate for the executive court administrator position subsequent to Kost's departure, and instead

---

[8]According to Moore, Kost (1) reprimanded her for the claimed mishandling of a death threat against Referee Kathleen Svoboda, (2) imposed disciplinary measures upon her because she had not adequately analyzed Judge Richard Halloran's docket, (3) removed her from three "key" committees, (4) improperly advised outside parties of her allegedly deficient work performance, (5) refused to fill necessary vacancies in her department, (6) accused her of not performing her work, and (7) excluded her from meetings.

21

restricted her authority to matters relating only to the court's criminal division. She also believes that Smith's conduct in removing Judge Edward Ewell as Chief of the Criminal Division within one week of his deposition testimony in this case was a separate act of retaliation.

Inasmuch as *Burlington* clarified that the threshold for establishing a materially adverse employment action is less onerous in a retaliation context than it is in sustaining an anti-discrimination claim, the Court finds that the conduct about which Moore complains satisfies this "relatively low bar." *Michael v. Caterpillar,* 496 F.3d 584, 595-596 (6th Cir. 2007). This is especially so where, as here, there was a potential impact on Moore's professional reputation as (1) the second-in-command officer within the court administrator's office, and (2) someone who had the potential of being a likely successor to Kost. When viewed in a light that is most favorable to Moore, the Court believes there is a triable factual issue as to whether she was subjected to an adverse employment action by her employer.

As noted, Moore must also establish a causal connection between the protected activity and the adverse employment action by pointing to evidence that is "sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Walcott v. City of Cleveland*, 123 Fed. Appx. 171, 178 (6th Cir. 2005) (quoting *EEOC v. Avery Dennison Corp*., 104 F.3d 858, 861 (6th Cir.1997)). Temporal proximity alone - without additional evidence of a retaliatory animus - will not suffice to support a finding of a causal connection. *Id.*

To meet her burden, Moore posits that much of the alleged retaliation occurred in response to the lodging of her internal complaints with the Defendant's human resources department, filing a complaint with the EEOC in September of 2007, and commencing this lawsuit in June of 2008. She notes that in the roughly eighteen-month period thereafter, she was (1) officially disciplined

three to four times (after never having been previously reprimanded), (2) accused of harboring financial motives in pursuing her sexual harassment claim, (3) passed over for the interim and/or permanent court administrator position (despite her qualifications), and (4) the subject of an founded rumor that she was having an inappropriate relationship with Judge Ewell. Furthermore, Moore asserts that the temporal proximity between these claims establishes causation, especially when coupled with incriminating remarks by Chief Judge Smith that (1) he did not like this lawsuit, (2) it may be necessary to "get rid" of her and she may not be in the future plans of the court, (3) she and Judge Ewell were "messing around," and (4) if Judge Ewell did not cease this inappropriate conduct, he would have to be removed from serving as the presiding judge over the Defendant's criminal division. Moore theorizes Chief Judge Smith's comments as having an indirect connection with her unjustified fragile relationship with the Defendant, and notes that Judge Ewell was removed from his post within one week after he gave deposition testimony on her behalf in this lawsuit.

As to Moore's accusation that her protected activity was the basis for the disciplinary measures that followed her handling of the issues relating to Referee Svoboda and Judge Halloran, and to the claimed unauthorized shopping trip, these claims must fail. Aside from highlighting the proximity of these events to her protected activity, Moore has not presented any persuasive evidence to prove - by a preponderance - that discrimination was the likely real reason for the adverse action. *EEOC v. Avery Dennison Corp.,* 104 F.3d 858 (6th Cir. 1997). Rather, it appears that Moore argues with the wisdom of the Defendant's proffered reasoning, and/or explained to the Court why this reasoning is flawed. Such a showing alone - even if true - is not sufficient to establish that discriminatory bias was likely the motivation behind the imposition of the

Defendant's discipline.  Thus, this aspect of Moore's retaliation claim must fail.

Nevertheless, the Court is compelled to reach a different conclusion with regard to conduct involving Chief Judges Giovan and Smith, who - according to Moore - (1) impugned her integrity and chastity, (2) barred her from accessing certain areas within the Defendant's offices, (3) refused to consider her for the interim or the permanent executive court administrator position, (4) reduced her level of authority to such an extent that she only worked with the Defendant's criminal division and (5) may have retaliated against Judge Ewell based on his deposition testimony in this case.

With regard to these claims, Moore has proffered testimony from Judge Colombo that at one time, he regarded her as likely to be the next court administrator.  Moreover, although the Court does not receive this evidence as having established the truth of the matters asserted, Moore has proffered a sufficiency of deposition testimony from Judge Ewell and Judge Cylenthia Miller which, if proven, suggests that Judge Smith's state of mind may have impacted his employment decisions.  The Defendant has not proffered a legitimate, non-discriminatory reason for engaging in these employment actions.[9]  Thus, the Court must, and does, find that Moore has made out a *prima facie* case of discrimination as to this aspect of her retaliation claim.  The Defendant's request for a summary judgment on this count will be denied, but without prejudice to its right to renew a dispositive motion as to this count within a period of thirty days from the entry of this order.

IV.

_____

[9]The Court is aware of the Defendant's decision to delay briefing this issue until it received a ruling on its objections to the Moore's lawsuit.  Nevertheless, inasmuch as she addressed these issues in her pleadings, the Court deems it appropriate to issue a ruling based on the existing record.  Accordingly, the Defendant's motion to strike those aspects of Moore's pleading which addressed her Fourth Amended Complaint must be, and is, denied.

Therefore, for the reasons that have been set forth above, the Defendant's motion for a summary judgment is denied in part and granted in part.

The Defendant's objection to the order of the Magistrate Judge (Docket Entry No. 125) must be, and is, denied.

The Defendant's motion to strike portions of the Plaintiff's responsive pleading (Docket No. 165) is denied.

The Defendant's motion to file an oversized reply brief (Docket Entry No. 166) is granted.


IT IS SO ORDERED.


Date: September 29, 2011                          s/Julian Abele Cook, Jr.
                                                 JULIAN ABELE COOK, JR.
                                                 U.S. District Court Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 29, 2011

                                                 s/ Kay Doaks
                                                 Case Manager